# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
    Plaintiff,

v.

**OSWARD OLIVERAS CARDONA,**
    Defendant.

CRIM. NO. 23-306 (PAD)

## REPORT AND RECOMMENDATION

### I.  Procedural History

On August 17, 2023, the grand jury returned an indictment charging the defendant, Osward Oliveras Cardona ("Defendant"), with Illegal Possession of a Machinegun, in violation of Title 18, *United States Code,* Section 922(o), and Illegal Receipt of a Firearm by a Person Under Indictment, in violation of Title 18, *United States Code*, Section 922(n) ("Indictment").[1]

On July 12, 2024, the Defendant filed a Motion to Suppress ("Motion to Suppress"). *See* Docket No. 33. In his Motion to Suppress, the Defendant argued that by checking the box on the Puerto Rico Police Bureau ("PRPB") *Miranda* Rights Form[2] indicating that he understood his rights and did _not_ wish to waive them, he was invoking his right to counsel and his right to remain silent in the face to questioning by PRPB officers. Notwithstanding the invocation of his Fifth Amendment rights, later that same day, Alcohol, Tobacco, Firearms and Explosives ("ATF") agents proceeded to re-*Mirandize* him and conduct an audio-recorded custodial interview, during which interview the Defendant made several incriminating statements. *Id.; see also* Docket No. 40-5 (transcript of custodial

---

[1] The Indictment contains a total of four counts. The Defendant is included in Counts One and Two only. Counts Three and Four charge co-defendant, John Sánchez Irizarry, with Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, *United States Code*, Section 841(a)(1) (Count Three), and Possession with Intent to Distribute a Controlled Substance, in violation of Title 18, *United States Code,* Section 924(c)(1)(A)(i) (Count Four).

[2] The Defendant signed the PRPB *Miranda* Rights Form on August 11, 2023 at 4:00AM.

Case 3:23-cr-00306-PAD-MDM Document 57 Filed 02/06/25 Page 2 of 10

*United States v. Oswald Oliveras Cardona* Page 2
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

interview by ATF agents). Through his Motion to Suppress, the Defendant sought to suppress the statements he made to ATF agents. *Id.*

Defendant's Motion to Suppress was referred to the undersigned to conduct a hearing, if necessary, and to prepare a Report and Recommendation. *See* Docket No. 45.[3] The Court scheduled an evidentiary hearing for January 3, 2025. *See* Docket No. 48. On December 30, 2024, however, one business day before the scheduled evidentiary hearing, the government filed a motion to vacate the hearing on the ground that it was not going to use the Defendant's "statements *in its case in chief* at trial, [therefore,] the matter is now moot" ("Motion to Vacate Hearing"). Docket No. 51 at 1. (Emphasis added).

Later that same day, the Defendant filed a Motion Requesting Order ("Motion Requesting Order"). *See* Docket No. 52. In his Motion Requesting Order, the Defendant voiced his disagreement with the government that the matter is now moot and requested that the Court "treat the prosecution's representation that it will not use [the Defendant's] statements in its case in chief as an unopposed motion and grant his motion to suppress in relevant part." *Id.* at 3. In support of his request, the Defendant argued that the ATF agents' "deliberate disregard of his unambiguous request for an attorney" prior to providing his incriminating statements "warrants the Court's intervention to apply the exclusionary sanction barring the prosecution's use of [the Defendant's] statements entirely," including their use for purposes of impeachment during cross-examination, rebuttal, or sentencing. *Id.* at 2-3.

On January 17, 2025, the government filed an opposition to Defendant's Motion Requesting Order ("Opposition"). *See* Docket No. 55. In its Opposition, the government argued first, that the trustworthiness of Defendant's statements satisfies legal standards because the Defendant was re-*Mirandized* by federal agents before

---

[3] In Docket No. 45, the Court also referred to the undersigned for a Report and Recommendation, Defendant's Motion to Compel Disclosure of Discovery ("Motion to Compel"), filed at Docket No. 42 as well as Defendant's Motion for Setting of [an] Evidentiary Hearing, filed at Docket No. 43. The undersigned resolved the Motion to Compel through a docket entry order issued at Docket No. 46, as amended by Docket No. 50.

Case 3:23-cr-00306-PAD-MDM   Document 57   Filed 02/06/25   Page 3 of 10

*United States v. Osward Oliveras Cardona*                                                                                                              Page 3
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

being interviewed. *Id.* at 2. Second, the deterrence effect of the exclusionary rule is satisfied "when the evidence in question is made unavailable to the prosecution in its case in chief." *Id.* at 3. Furthermore, extending the exclusionary rule to include *all* uses of Defendant's statements would "turn *Miranda* into a shield which would allow the Defendant to defend himself through perjury." *Id.* (Emphasis added). And third, the unpublished decision from the Western District of Wisconsin in *United States v. Cook*, 2017 WL 11501105 at *1 (W.D. Wis. Oct. 24, 2017), cited by the defendant in support of his request for an order excluding all uses of his statements is inapposite, and therefore, should not be followed by this Court.

After careful consideration of the arguments raised by the parties in their respective briefs (*see* Docket Nos. 52 & 55), and after reviewing the exhibits submitted in support of both the Motion to Suppress and the Opposition (*see* Docket Nos. 33 & 40), which includes a transcript of Defendant's audio recorded custodial interview by ATF agents (*see* Docket No. 40-5), the Court sides with the government and **RECOMMENDS** that Defendant's Motion Requesting Order be **DENIED**.

## II.   Legal Discussion

In *Harris v. New York*,[4] the U.S. Supreme Court issued what has since become one of the seminal decisions dealing with a prosecutor's ability to use a defendant's own statements against him for purposes of impeachment notwithstanding the fact that the statements were made under circumstances that rendered them inadmissible for use in the government's case in chief. *Harris*, 401 U.S. at 226; *see also Miranda v. Arizona*, 384 U.S. 436 (1966). In *Harris*, the State of New York charged defendant, Viven Harris ("Harris"), in a two-count indictment for having twice sold heroin to an undercover police officer. At a subsequent jury trial, the undercover officer testified as to the facts of each of the two drug sales, but he specifically omitted any mention of incriminating statements that Harris made

---

[4] *Harris v. New York*, 401 U.S. 222, 226 (1966).

Case 3:23-cr-00306-PAD-MDM   Document 57   Filed 02/06/25   Page 4 of 10

*United States v. Osward Oliveras Cardona*                                                                                                       Page 4
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

because the government conceded that the statements were inadmissible under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Harris later took the stand in his own defense and admitted knowing the undercover officer but denied participating in any sale of drugs on the first of the two days charged. He also admitted selling the contents of a glassine bag but claimed it only contained baking powder and was part of a scheme to defraud the purchaser. *Oregon v. Hass*, 420 U.S. 714, 721 (1975) (citing *Harris*, 401 U.S. at 223).

On cross-examination, Harris was asked by the prosecutor whether he had made any specified statements to police immediately following his arrest; statements that partially contradicted his direct testimony at trial. In response, Harris testified that he could not remember the questions or answers recited by the prosecutor. At the request of Harris' counsel, the written statement from which the prosecutor had read questions and answers in his impeaching process was placed in the record for possible use on appeal. The statement itself was not shown to the jury. *Harris*, at 223. The trial court instructed the jury that the statements attributed to Harris could be used only in passing on his credibility and not as evidence of guilt. The jury later returned a verdict of guilty as to count two of the indictment. *Id.*

At trial, the prosecution had intentionally not sought to use the statements in its case in chief for it conceded that they were inadmissible under *Miranda* because Harris had not been advised of his right to appointed counsel. Relying on its own precedent in *Walder v. United States*, 347 U.S. 62 (1954), a Fourth Amendment case wherein the Court permitted physical evidence inadmissible in the government's case in chief to be used for impeachment purposes, the *Harris* Court noted that,

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine (*Weeks v. United States*,

Case 3:23-cr-00306-PAD-MDM    Document 57    Filed 02/06/25    Page 5 of 10

*United States v. Osward Oliveras Cardona*                                                                                            Page 5
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

> 232 U.S. 383, 34 S. Ct. 341, 58 L. Ed. 652 [1914]) would be a perversion of the Fourth Amendment.

*Harris*, at 224 (quoting *Walder*, at 65).

Although *Walder* is a Fourth Amendment case, and both Harris and the present case are Fifth Amendment cases, the Court in *Harris* noted that there was no "difference in principle" between *Walder* and *Harris*, and that the "impeachment process . . . undoubtedly provided valuable aid to the jury in assessing [defendant's] credibility." *Harris*, at 225.

The *Harris* Court further stated that,

> Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.
>
> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

*Harris*, at 225-226. (Citations omitted).

While the *Harris* decision clearly held that the government may use a defendant's statements against him for purposes of impeachment even if the statements were obtained in violation of the Fifth Amendment, that use is by no means plenary. Indeed, speaking on behalf of a divided Court, Chief Justice Burger in *Harris* noted that "[i]t does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards.*" *Harris*, at 224. (Emphasis added). In other words, if the trustworthiness of a

Case 3:23-cr-00306-PAD-MDM    Document 57    Filed 02/06/25    Page 6 of 10

*United States v. Oswald Oliveras Cardona*                                                    Page 6
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

particular statement is suspect, then the court may exclude its use by the prosecution even for purposes of impeachment.

For example, in *Mincey v. Arizona*, supra, the Supreme Court found that a defendant's statement did not satisfy legal standards because it was found to have been given involuntarily through coercion and duress, and any statement so given would constitute "a denial of due process of law." *Mincey v. Arizona*, 437 U.S. 385, 397 (1978).

In *Mincey v. Arizona*, the defendant, Rufus Junior Mincey ("Mincey"), was involved in a shootout with police during a narcotics raid on his apartment. An undercover police officer was shot and killed and the defendant was wounded. 378 U.S. at 387. Mincey was brought to the hospital after the shooting and taken immediately to the emergency room where he was examined and treated. *Id.* at 396. He had sustained a wound in his hip, resulting in damage to the sciatic nerve and partial paralysis of his right leg. *Id.* Tubes were inserted into his throat to help him breathe, and through his nose into his stomach to keep him from vomiting; a catheter was inserted into his bladder. *Id.* He received various drugs, and a device was attached to his arm so that he could be fed intravenously. He was then taken to the intensive care unit. *Id.*

At around eight o'clock that evening, Detective Hust of the Tucson Police Department came to the intensive care unit to interrogate him. *Id.* Mincey was unable to talk because of the tube in his mouth, so he responded to Detective Hust's questions by writing answers on pieces of paper provided by the hospital. *Id.* Hust told Mincey he was under arrest for the murder of a police officer, gave him the warnings required by *Miranda v. Arizona*, and began to ask questions about the events that had taken place in Mincey's apartment a few hours earlier. *Id.* Although Mincey asked repeatedly that the interrogation stop until he could get a lawyer, Hust continued to question him until almost midnight. *Id.*

In conducting an independent evaluation of the record, the Court found that Mincey's statements were the result of "virtually continuous questioning of a

Case 3:23-cr-00306-PAD-MDM   Document 57   Filed 02/06/25   Page 7 of 10

*United States v. Osward Oliveras Cardona*                                                                                                                 Page 7
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

seriously and painfully wounded man on the edge of consciousness," and thus were deemed *not* to be "the product of his free and rational choice." *Id.* at 401. Accordingly, the Court held that "due process of law requires that [Mincey's] statements[,] obtained as they were[,] cannot be used *in any way* against a defendant at his trial." *Id.* at 402. (Emphasis added).

Although that is not the situation in the present case, the defendant nevertheless argues that "the constitutional violation went well beyond a [simple] failure to read Mr. Oliveras his *Miranda* rights. It involved "a deliberate disregard of defendant's unambiguous request for an attorney," and therefore "warrants this Court's intervention to apply the exclusionary rule barring the prosecution's use of defendant's statements" for any purpose at trial. Docket No. 52 at 2-3. While it is true that "once a suspect has invoked the right to counsel, knowledge of that request is imparted to all law enforcement officers who subsequently deal with the suspect," *United States v. Porter*, 764 F.2d 1, 7 (1st Cir. 1985) (internal quotations marks and citations omitted), the Court does not agree with the Defendant that the severity of the violation here rises to the level of requiring the ultimate exercise of deterrence.

Indeed, the Court finds that the Fifth Amendment violation in this case is not appreciably different than that in *Harris*. In Harris, the agents failed to advise the defendant of his right to counsel before questioning him. Here, the ATF agents questioned the Defendant after he had invoked his right to counsel. Though not a sanctioned practice, of course, police are indeed human and there are constitutional safeguards in place to dissuade such conduct. As the *Harris* Court stated, "[a]ssuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief." 401 U.S. 225-226. In that same vein, the Court in *Oregon v. Hass*, 420 U.S. 714 (1975), stated that, "[t]he deterrence of the exclusionary rule, of course, lies in the necessity to give the warnings. That these warnings, in a given case, may prove to be incomplete, and therefore defective, as in *Harris*, or not perfectly employed, like here, does not mean that they have not served as a deterrent

Case 3:23-cr-00306-PAD-MDM  Document 57  Filed 02/06/25  Page 8 of 10

*United States v. Osward Oliveras Cardona*                                                                 Page 8
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

to the officer who is not then aware of their defect; and to the officer who is aware of the defect the full deterrence remains." *Id.* The effect of inadmissibility in *Harris* and in this case is the same: "inadmissibility would pervert the constitutional right into a right to falsify free from the embarrassment of impeachment evidence from the defendant's own mouth." *Id.*

This Court finds that the deterrence requirement is unequivocally satisfied in this instance, as the government has conceded that it will not rely on the Defendant's "statements in its case in chief at trial . . . ." *See* Docket No. 51 at 1. The Court takes the government's statements at face value and will indeed hold the government to its word. The Defendant's statements should be made unavailable to the prosecution in its case in chief.

Moreover, based on the undersigned's independent review of the record, there does not appear to be any significant question as to the trustworthiness of the statements given by the defendant to ATF agents. The transcript from the defendant's custodial interview with ATF agents demonstrates that, after the Defendant was read his *Miranda* rights, he was asked if he had any questions about any of them, to which he responded, "No." Docket No. 40-5 at 1. When he was asked if he was clear that he had the right to have an attorney present and that he had the right to refuse to answer any question at any time, he responded by saying, "Of course." Short of not having been provided an attorney after having invoked his right to one, the Defendant does not appear to have experienced any coercion or duress in providing the statements to the ATF agents; nor does the defendant so allege.

In sum, therefore, the Court does not find that the agents' conduct rises to the level of an abuse so as to call into question the statements' trustworthiness thereby warranting their absolute exclusion. Neither does Defendant's Motion Requesting Order explain how such conduct could be deemed an abuse. Instead, the Defendant merely suggests that this Court should follow the holding in the unpublished, out of

Case 3:23-cr-00306-PAD-MDM   Document 57   Filed 02/06/25   Page 9 of 10

*United States v. Oswald Oliveras Cardona*                                                                                                Page 9
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

circuit, district court decision in *United States v. Cook*, 2017 WL 11501105 *1 (W.D. Wisc. Oct. 24, 2017) *rev'd on other grounds,* 970 F.3d 866 (7th Cir. 2020).

In *Cook*, the defendant filed a motion to suppress certain statements he made to police after he had already invoked his Fifth Amendment right to remain silent. *Id.* at *1. In response to the motion to suppress, the government indicated that it did not intend to use the defendant's statements "for any reason, including cross-examination, rebuttal or sentencing." *Id.* Notwithstanding that significant concession, the defendant nevertheless asked the court to grant his motion to suppress "in order to guarantee that the statements cannot be used in the event the government changes its position." *Id.* Although the court said it would take the government at its word, in an abundance of caution, the court granted the motion to suppress as *un*opposed instead of denying it as moot.

Though the court in *Cook* granted the defendant's motion to suppress, it did so based on the fact that the government had stipulated that it would not use the defendant's statements for *any purpose* whatsoever. Such a concession is a far cry from the facts in this case where the government stated very clearly in its Motion to Vacate Hearing (docket no. 51), and reiterated in its Opposition (docket no. 55), that it would *not* use the Defendant's statements "in its case in chief," and that it did *not* agree that the statements should be suppressed for *all* purposes. *See* Docket No. 51. Given that fact, the Court finds that *Cook* is inapposite.

Moreover, the court in *Cook,* did not engage in any analysis regarding the trustworthiness of the statements nor the applicability of the *Harris* line of cases. It did not do so because it did not have to. Instead, given the government's concession, which made the issue regarding the use of defendant's statements moot, the court granted the defendant's motion to suppress as if it were engaging in a ministerial task. The Court therefore finds that *Cook* is irrelevant to the controversy at hand and declines Defendant's invitation to follow its ruling.

In the final analysis, the Court finds that the trustworthiness of Defendant's statements satisfies legal standards and, while the Court will hold the government

Case 3:23-cr-00306-PAD-MDM  Document 57  Filed 02/06/25  Page 10 of 10

*United States v. Osward Oliveras Cardona*  Page 10
Crim. No. 23-306 (PAD-MDM)
Report and Recommendation
_____

to its word not to use the Defendant's statements in its case in chief, absolute exclusion of those statements for any and all purposes is unwarranted.

### III. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion Requesting Order (Docket No. 52) be **DENIED**.

**IT IS SO RECOMMENDED**.

The parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 6th day of February 2025.

s/ *Marshal D. Morgan*

Marshal D. Morgan
United States Magistrate Judge
for the District of Puerto Rico